## William H. Pindell et al.

### v.

## Joseph B. Quinn et al.

1. Equity Jurisdiction—General rule.—The general rule is that where the matter of the bill merely concerns personal chattels and sounds in damages, the remedy is at law, and chancery will not interfere; nor will a court of equity interfere merely on the ground that the defendant is prosecuting an action of replevin which is groundless, nor in the ordinary case of a repetition of trespasses by the same person.

2. WHEN EQUITY WILL RESTRAIN SUITS.—Where the plaintiffs and defendants were copartners, and the defendants, by proceedings in court in another state were seeking a dissolution of such copartnership, and in such proceeding it was stipulated that the plaintiff might carry on the business under the direction of a receiver, with the right to sell the product manufactured in said business, a court of equity will restrain the defendants from an unlawful interference by replevin suits, with the sale of such manufactures.

APPEAL from the Circuit Court of Cook county; the Hon. W. H. BARNUM, Judge, presiding. Opinion filed December 13, 1880.

This was a bill in equity, brought in the Circuit Court of Cook county, May 13, 1884, by William H. and George W. Pindell, who resided in Hannibal, in the State of Missouri, against Joseph B. Quinn and Mary E. Quinn, for an injunction against the latter. The bill shows that May 27, 1873, these parties formed a copartnership in the general milling business, under the firm name of Pindell Bros. & Co., at Hannibal, the said Quinns being the owners in fee of one-third of the mill property, known as the "Magnolia Mills," and Richard Pindell, father of complainants, of two-thirds; that said partnership business was carried on by the use of said mills. It further shows that in March, 1880, the said Quinns filed their bill in the Circuit Court of the United States for the Eastern District of Missouri, against their copartners, the plaintiffs in the present suit, for a dissolution and settlement of the partnership affairs; that, April 2, 1880, the respective parties to that suit entered into and filed a stipulation in the cause, providing not only for an interlocutory decree dissolving the copartnership, but for the appointment of a receiver, an appraiser, and the mode and manner, terms and conditions on which said partnership affairs were to be closed up, under the direction of the court, with the aid of a receiver, appraiser and master in chancery; that on this stipulation, and in accordance with it, an interlocutory decree was entered, all of which is fully set forth; by which it appears the decree declared the Quinns to be owners in fee of one-third of the mill premises, and one Richard Pindell of two-thirds; and it provided that said William H.

and George W. Pindell should have the use of said real estate until the interest of the Quinns should be disposed of on partition, for which use they were to pay the Quinns during the first year after such dissolution, in monthly installments, such compensation as the master in chancery should determine to be right and just. It was also provided as to wheat and flour on hand at the time of dissolution, that said William H. and George W. Pindell, who were to continue the business after such dissolution under the supervision of the receiver, should take the same at its original cost to the firm, which was to be ascertained by the master and charged to them in said master's statement of the accounts, and they were to pay this aggregate amount towards the debts of the firm, under the direction of the receiver.

And in the bill, in this present case, it is further shown that such receiver of the partnership effects; that the wheat on hand was weighed out under his direction, and taken by said William H. and George W. Pindell, the plaintiffs in this present suit, the price ascertained, as above stated, and paid by plaintiffs; that the latter proceeded to carry on said mills in pursuance of said stipulation and decree, and while the settlement of said affairs was still pending, under the power and direction of said United States Circuit Court, the plaintiffs in this suit began the shipment of flour, made out of said wheat, to Chicago, to be disposed of at wholesale; that as fast as it arrived, it would be maliciously seized by the Quinns, by virtue of writs of replevin obtained upon false affidavits, and that they threatened and took steps to prevent plaintiffs from disposing of any of said flour in the city of Chicago, and in one case abused the jurisdiction of a justice's court by replevying a lot of flour, worth seven hundred dollars, by the pretext of a writ of that court, when the jurisdiction extended only to property not exceeding two hundred dollars, the bill alleging such suits to be unjust, without foundation, and vexatious.

May 14, 1880, a temporary injunction was issued to restrain the Quinns from further interfering with plaintiffs' flour aforesaid. The usual bond was given and the bill was properly verified, but the court below dissolved the injunction and dis-

missed the bill on motion of the defendants, for want of equity, at plaintiffs' cost, and assessed damages for the wrongful issuance of the injunction at seventy-five dollars. The plaintiffs appealed to this court, and assigned error upon such action of the court.

Mr. JOHN MORRIS, for appellants; in support of a claim for an injunction, cited High on Injunctions, § 12; Bissell v. Beckwith, 33 Conn. 357; N. Y. & N. H. R. R. Co. v. Schuyler, 17 How. Pr. 464; Watson v. Sutherland, 5 Wall. 74.

Messrs. WHITESIDE & WILSON, for appellees; opposed to an injunction, cited High on Injunctions, § 459; Hilliard on Injunctions, 281; Livingston v. Livingston, 6 Johns. Ch. 497; Hamilton v. Stewart, 59 Ill. 330.

McALLISTER, P. J. The court below, as appears from the record, the argument and concessions of counsel, dissolved the injunction, and dismissed the bill on the ground that the matter of it concerned only personal property and the complainants had a complete remedy at law. The general rule undoubtedly is, that when the matter of the bill merely concerns personal chattels and sounds in damages the remedy is at law only. and chancery will not interfere because a court of law can grant complete reparation. Hardwick v. Forbes, 1 Bibb. 212, Nor will a court of equity interfere merely on the ground that the defendant is prosecuting an action of replevin which is groundless. Lowe v. Lowry, 4 Ham. 77. Nor in the ordinary case of a repetition of trespasses by the same person. High on Injunctions, § 459.

This case, however, is governed by entirely different principles. The complainants and defendants had been copartners in operating the "Magnolia Mills" at Hannibal, Missouri, and the defendants, residing in Chicago, in the state of Illinois, while the plaintiffs resided at Hannibal, in the state of Missouri, filed their bill in the United States Circuit Court for Eastern Missouri, against the complainants in this present suit, to dissolve the partnership, settle the rights of the respective

parties to the mill premises and close up the concern under the direction of that court. April 2, 1880, a stipulation was entered into between the respective parties and filed in that cause, providing for the entry of a decree of dissolution, the appointment of a receiver, an appraiser and reference to a master, and also for the details as to the manner in which all the rights of the parties were to be arranged and the affairs of the firm closed up under the direction of said court with the aid of its receiver and master in chancery. An interlocutory decree was entered on the same day in pursuance of such stipulation; a receiver was appointed as well as appraiser, and a master in chancery designated.

Under that stipulation, William H. and George W. Pindell were to have the use of the mills of which the Quinns were one-third owners in fee until the interest of the latter should be finally sold on partition, and for the first year the Pindells were to pay the Quinns in monthly installments such reasonable compensation as should be determined upon by said master in chancery. Under this the Pindells were in possession, and to operate the mills under supervision of the receiver, who was also appointed and in possession. It was also provided in the stipulation that the Pindells were to have all the flour and wheat on hand at the time of the dissolution, to be taken by them at the original cost to the firm, such cost to be ascertained by the master, and the amount charged in the Pindells' account in the master's statement of the account, the aggregate of which was to be paid by the Pindells under the direction of the receiver on the liabilities of the co-partnership. This having been done, and while the whole matter was under the jurisdiction of said federal court, a jurisdiction of the Quinns' own seeking, the Pindells having manufactured said wheat, or a portion of it into flour, as authorized by the stipulation of the Quinns, of record in said cause, such flour is legally and properly shipped to Chicago for sale, and there the Quinns maliciously and with the avowed purpose of driving the Pindells, with that commodity, out of the market, seize it by virtue of successive writs of replevin, sued out by means of false affidavits, as the bill alleges, and in one instance from

justice's court, where the property was of the value of seven hundred dollars the affidavits falsely stating it was worth two hundred dollars, and a bond given upon that basis. It was to restrain any further such interference as this that the injunction was prayed.

If the Quinns, after said stipulation, decree and appointment of receiver, and the Pindells had taken and commenced manufacturing said wheat and had, there within the jurisdiction of said federal court, interfered with said flour and said Pindells' business, with the purpose and in the manner stated and charged in the bill, in this case, can it be doubted, that upon the general principle of equity, the Pindells could have gone into such federal court, upon supplementary bill or petition, applied for and obtained of said court, an injunction? Certainly not. The injunction would go upon the ground that the subject-matter and the parties were still under the court's jurisdiction, and that the acts of the Quinns were not only in violation of the spirit of their solemn stipulation on which the court had acted, in entering its decree, but in contempt of its authority. Story says a supplemental bill may also be filed, as well after as before a decree; and the bill, if after a decree, may be, either in aid of the decree, that it may be carried fully into execution, or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it, or by the defense made to it    Story's Eq. Pl. Sec. 338.

It needs no argument to prove, that the decree of the federal court in question, could not be carried fully into execution, in accordance with the letter and spirit of the provisions of the stipulation if the Quinns could be permitted to break up the operation of the mills by the Pindells, under the supervision of the receiver; or to seize without right, the flour made from wheat, the price of which the Pindells had paid towards the debts of the firm, whose affairs were to be administered and closed up by the court of chancery. Besides, the Quinns were quasi landlords of the Pindells, as to one-third interest in the mill premises, which the latter were authorized by the stipulation to use pending the closing up of the affairs of the firm. The Quinns were, therefore, subject to an equitable duty aris-

ing out of these peculiar relations, not to injuriously interfere with such use of the mill property and the business of the Pindells so carried on within the clear intention of the parties, that they might so do, as provided by said stipulation. Repeated violations of that duty, afford a much clearer ground for equitable jurisdiction, than those of a covenant between partners, where an action would lie at law, for a breach. See observations of Lord Eldon in Waters v. Taylor, 2 Ves. & B. 302.

Now, will it do to say that because the Quinns did not commit these repeated acts in violation of such equitable duty within the jurisdiction of said federal court, which had by its decree taken the control of the whole subject-matter, and from which and the parties' own stipulation equitable rights had been fixed and duties arisen, the courts of equity of the state of Illinois, where the Quinns resided and the acts complained of were committed, had no jurisdiction, and the injured parties must be remitted to the courts of law, where no adequate relief could be afforded? We think not; and that, to prevent a failure of justice, the Pindells may properly resort to the court of equity here, by an original, in the nature of a supplemental bill, and have the relief prayed, and that the question of a remedy at law, or the solvency or otherwise of the Quinns, has no proper application to the case, which is based upon equities arising out of the proceedings in the federal circuit court in Missouri, whose jurisdiction had been sought by the Quinns themselves. The decree of the court below will be reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.